```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
SEAMAR SHIPPING CORPORATION,              :
                                          :
                     Plaintiff,           :
                                          :   06 Civ. 5507 (JSR)
          -v.-                            :
                                          :   OPINION AND ORDER
KREMIKOVTZI TRADE LTD. AND KREMIKOVTZI    :
CORPORATION,                              :
                                          :
                     Defendants.          :
------------------------------------------X
```

JED S. RAKOFF, U.S.D.J.

By Order dated November 14, 2006, the Court granted the motion of intervenor GSHL Bulgaria S.A. ("GSHL") to vacate the Court's <u>Ex</u> <u>Parte</u> Order of Maritime Attachment, dated July 21, 2006, which restrained $243,004.87 in funds that were involved in an Electronic Funds Transfer ("EFT") routed through an intermediary bank in this District.  This Opinion and Order will state the reasons for that determination and initiate further proceedings in this case.

For purposes of this motion, the pertinent facts are undisputed.  Plaintiff Seamar Shipping Corporation is a company organized under the laws of Liberia and owner of the vessel M.V. Agios Raphael (the "Vessel").  Complaint ¶ 2.  By charter party dated February 11, 2004, plaintiff chartered the Vessel to defendants Kremikovtzi Trade Ltd. and Kremikovtzi Corporation (two Bulgarian companies here collectively called "Kremikovtzi") for the carriage of a cargo of bulk coal from Mobile to Bulgaria.  <u>Id.</u> ¶ 4.  Although the Vessel completed its discharge at

Bulgaria, plaintiff asserts that the Vessel was twice delayed -- once while loading in Mobile and once while discharging in Bulgaria -- and was thus on demurrage for some five days during the voyage.  Id. ¶¶ 6-7.  Plaintiff asserts that its total claim against Kremikovtzi is for $243,004.87.  Id. ¶ 12.

Plaintiff filed the instant action on July 21, 2006, together with an ex parte application for an order permitting it to attach any property held by Kremikovtzi in this District up to the sum of $243,004.87.  In accordance with Rule B(1)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Admiralty Rules"), the Order was granted subject to being thereafter contested by Kremikovtzi.[1]

The attached funds were part of an EFT of $1,213,989.92 from intervenor GSHL's account at The Bank of New York's London branch to another GSHL account at UBS Bank's branch in Lugano, Switzerland.  Harter Aff. ¶ 6.  The transfer was denominated in United States Dollars and thus had to be routed through an intermediary bank in the United States.  Id. ¶ 7.  The funds were

---

[1] Additionally, in an action before Judge Marrero, Phoenix Bulk Carriers Ltd. v. Kremikovtzi Trade Ltd., 05 Civ. 9559, plaintiff obtained an order attaching $883,717.24 of Kremikovtzi's funds, Affirmation of Simon Harter dated October 17, 2006 ("Harter Aff."), at ¶¶ 2, 4, and the plaintiffs in two other actions that were subsequently consolidated with Phoenix Bulk -- Fino Marine S.A. v. Kremikovtzi Trade Ltd., 05 Civ. 10320 and D'Amato Fratelli Spa v. Kremikovtzi Trade, 05 Civ. 10585 -- obtained attachments of those same funds in equal or lesser amounts.  Harter Aff. ¶ 3.

routed through UBS's branch in New York, where the attachment occurred.  Id.

On October 3, 2006, intervenor GSHL made a restricted appearance in the instant case, pursuant to Rule E(8) of the Admiralty Rules, to contest the attachment.  GSHL argued that when The Bank of New York's London branch issued transfer instructions for the EFT requested by GSHL, the instructions misstated the account holder at the receiving bank as being Kremikovtzi, rather than the actual holder, GSHL.  Harter Aff. ¶ 8.  In addition, GSHL argued that the Court should vacate the attachment because, regardless of whether GSHL or Kremikovtzi was the intended beneficiary of the EFT, the funds were not the property of either party while in transit and thus were not subject to attachment under Admiralty Rule B(1)(a).  It was on the basis of this latter argument that the Court granted the motion to vacate the attachment.

The analysis begins with the text of Rule B(1)(a), which permits attachment, where "a defendant is not found within the district," of "the defendant's tangible or intangible personal property," limited only by "the amount sued for."  In order to attach an EFT under this rule, it must be both "tangible or intangible property" and "defendant's" property.

In Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 278 (2d Cir. 2002), the Court of Appeals stated that "EFT funds in the

3

hands of an intermediary bank" qualify as "tangible or intangible property" subject to attachment under Rule B(1)(a). Winter Storm purported to ground this statement on "the broad, inclusive language of Admiralty Rule B(1)(a)," id., and on the EFT analysis in United States v. Daccarett, 6 F.3d 37 (2d Cir. 1993), a civil forfeiture action under federal drug laws, in which the Second Circuit held that "an EFT while it takes the form of a bank credit at an intermediary bank is clearly a seizable res under the forfeiture statutes," 6 F.3d at 55.

The Second Circuit has not spoken with one voice, however, on whether an EFT in the hands of an intermediary bank can be said to be a "defendant's" property, where the defendant is either the originator or the intended beneficiary of the EFT. In Winter Storm, the Court of Appeals did not address this question explicitly. Still, because Winter Storm instructed the district court to reinstate the attachment at issue, that decision has been construed to hold that the EFT at issue was the property of the defendant -- who was the originator of the EFT, see 310 F.3d at 266 -- under Rule B(1)(a). See, e.g., HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.A. de C.V., 2005 WL 1036127, at *4 (S.D.N.Y. 2005). However, in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006), the Second Circuit questioned the continued validity of Winter Storm's implicit holding on this point:

4

> The correctness of our decision in Winter Storm seems open to question, especially its reliance on Daccarett, 6 F.3d at 55, to hold that EFTs are property of the beneficiary or sender of an EFT. Because Daccarett was a forfeiture case, its holding that EFTs are attachable assets does not answer the more salient question of whose assets they are while in transit. In the absence of a federal rule, we would normally look to state law, which in this case would be the New York codification of the Uniform Commercial Code, N.Y. U.C.C. Law §§ 4-A-502 to 504. Under state law, the EFT could not be attached because EFTs are property of neither the sender nor the beneficiary while present in an intermediary bank. Id. §§ 4-A-502 cmt. 4, 4-A-504 cmt. 1.

Aqua Stoli, 460 F.3d at 446 n.6 (emphasis in original). This footnote stops short of explicitly overruling Winter Storm, but nevertheless it raises a serious question of whether Winter Storm's implicit holding that EFTs may be considered to be a defendant's property while in transit remains good law.[2]

---

[2] Like other high authorities, the Court of Appeals sometimes moves in mysterious ways. While it has been said that the Court of Appeals "is bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or [the Second Circuit Court of Appeals] en banc," United States v. Ianniello, 808 F.2d 184, 190 (2d Cir. 1986), rev'd on other grounds, United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989), nevertheless, on occasion panels of the Second Circuit Court of Appeals have overruled prior decisions after providing notice either to the judges on the panels that issued the prior decisions, see Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 & n.5 (2d Cir. 2005), or to all active members of the Court, see Adeleke v. United States, 355 F.3d 144, 155 & n.9 (2d Cir. 2004). The opinion in Aqua Stoli, however, does not appear to have been circulated to the panel that heard Winter Storm, and accordingly it may be doubtful whether Aqua Stoli could be considered to have overruled any part of Winter Storm. Yet the plain language in the above quoted passage in Aqua Stoli indicates that the decision in Winter Storm is now "open to question."

Regardless of whether <u>Winter Storm</u> remains good law in general, there is a more narrow question at issue in this case: whether an EFT can be attached under Rule B(1)(a) where the defendant is the intended <u>beneficiary</u> of the EFT, rather than the originator.  In reliance on <u>Winter Storm</u>, <u>Aqua Stoli</u> stated the broad rule that "EFTs <u>to or from</u> a party are attachable by a court as they pass through banks located in that court's jurisdiction."  <u>Aqua Stoli</u>, 460 F.3d at 436 (emphasis added).  This statement suggests that EFTs are attachable while in transit regardless of whether the defendant is the originator or the intended beneficiary of the EFT.  In <u>Winter Storm</u>, however, the defendant was clearly the originator of the EFT, <u>see</u> 310 F.3d at 266, and in <u>Aqua Stoli</u>, although the attachment applied to EFTs "to or from" the defendant, neither the court nor the parties addressed whether the funds that were actually attached had been sent to or from the defendant, <u>see</u> 460 F.3d 436.  Thus, <u>Aqua Stoli</u>'s statement that "EFTs to or from a party are attachable by a court," if construed as binding law, would substantially broaden <u>Winter Storm</u>'s holding, which technically applies only where the defendant is the originator of the EFT.

Given that <u>Aqua Stoli</u> called <u>Winter Storm</u> into serious doubt, <u>see Aqua Stoli</u>, 460 F.3d at 446 n.6, it would be illogical to construe other statements in <u>Aqua Stoli</u> to broaden <u>Winter Storm</u>.  To the contrary, taken as a whole, <u>Aqua Stoli</u> requires

this Court to construe Winter Storm narrowly.  Accordingly, Winter Storm's holding that an EFT is the property of an originator while in transit does not imply a corollary rule that the EFT is also the property of a beneficiary while in transit.[3]

In the instant case, Kremikovtzi is the purported beneficiary of the EFT.  Accordingly, neither Winter Storm nor Aqua Stoli binds this Court in determining whether the instant attachment can stand.  These cases do, however, provide meaningful guidance.  Both cases provide that "state law may be borrowed if there is no federal admiralty law in point on the particular question presented."  Winter Storm, 310 F.3d at 275; Aqua Stoli, 460 F.3d at 446 n.6 ("[i]n the absence of a federal rule, we would normally look to state law").  The Second Circuit has held that looking to state law is "especially appropriate" where "precedent in federal admiralty law is . . . thin," and

> "a decision . . . contrary to the general rule of the state might have disruptive consequences for the state banking system." [Det Bergenske Dampskibsselskab v. Sabre Shipping Corp., 341 F.2d 50, 52-53 (2d Cir. 1965)] (citation omitted).  New York being the situs for multiple transactions in world commerce, the New York banking system is particularly vulnerable to such disruption.  Often, when a person in one foreign country makes a payment in U.S. dollars to someone in another foreign country, the payment clears through New

---

[3] Although prior to the decision in Aqua Stoli, some courts in this District held, in reliance on Winter Storm, that EFTs in transit are attachable property belonging to the intended beneficiary, see, e.g., HBC Hamburg, 2005 WL 1036127, at *4, no court has so held since Aqua Stoli was decided.

>           York. . . .  It is only appropriate therefore that
>           we look to the New York law of attachment for
>           guidance.

<u>Reibor Int'l Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.</u>, 759 F.2d 262, 266 (2d Cir. 1985).

In the absence of a federal rule governing whether an EFT is the property of an intended beneficiary while in transit, this Court will look to state law for guidance.  <u>Aqua Stoli</u> identifies the applicable New York law as New York's codification of the Uniform Commercial Code.  <u>See</u> 460 F.3d at 446 n.6.  The New York U.C.C. provides that "<u>until the funds transfer is completed</u> by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary, <u>the beneficiary has no property interest in the funds transfer</u> which the beneficiary's creditor can reach."  N.Y. U.C.C. § 4-A-502 cmt. 4 (emphasis added).

The EFT in this case had not been completed when it was attached at UBS's branch in New York, on its way to UBS's branch in Lugano, Switzerland.  Harter Aff. ¶¶ 6-7.  As a result, Kremikovtzi had no property interest in the attached ETF, as Admiralty Rule B(1)(a) requires.  Accordingly, the Court, by the Order dated November 14, 2006, granted GSHL's motion to vacate the attachment.

At the time of oral argument on this motion, counsel for plaintiff requested, in the event GSHL prevailed on its motion to vacate, that the Court certify the case for interlocutory appeal

pursuant to 28 U.S.C. § 1292(b).  See Transcript, November 3, 2006, at 13.  The determination here reached to vacate the attachment clearly "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b).  Accordingly the Court hereby certifies this Opinion and Order, as well as the Order dated November 14, 2006, for interlocutory appeal.

Such an appeal, even if perfected, does not, however, stay further proceedings, if any, in the underlying case.  To ascertain whether there are any such proceedings that must be addressed, the Court hereby orders counsel for each of the parties to jointly telephone Chambers by no later than November 22, 2006, so that the Court may determine how best to proceed.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:   New York, New York
         November 17, 2006